Arthur BOYLE, as Administrator of the Estate of Cecelia Zyjewski, deceased, Plaintiff–Appellee,

v.

Emanuel REVICI, and Institute of Applied Biology, Inc., Defendants–Appellants.

No. 1705, Docket 91–7418.

United States Court of Appeals, Second Circuit.

Argued Oct. 25, 1991.

Decided April 14, 1992.

Samuel A. Abady, New York City (Catherine A. Helwig, Snow Becker Krauss, of counsel), for defendants-appellants.

David L. Bruckart, Great Neck, N.Y. (Alice F. Collopy, Pegalis & Wachsman, of counsel), for plaintiff-appellee.

Before: MESKILL, WINTER and WALKER, Circuit Judges.

MESKILL, Circuit Judge:

This diversity case involves claims for pain and suffering and wrongful death arising from the alleged medical malpractice of Emanuel Revici, M.D., a ninety-six year old New York citizen who is a practitioner of nonconventional cancer therapy, and his Institute of Applied Biology, Inc., a center incorporated and located in New York. The suit was filed by Cecelia Zyjewski, a citizen of Connecticut, who has since died, and is carried on by Arthur Boyle, the administrator of her estate.

Before the trial below was complete, we decided another case involving Dr. Revici, *Schneider v. Revici*, 817 F.2d 987, 995 (2d Cir.1987), which held that under New York law a jury charge on express assumption of risk is proper in medical malpractice cases where a patient knowingly forwent conventional medical treatment and instead accepted the risks that caused the injuries. Despite our decision in *Schneider*, the United States District Court for the Southern District of New York, Lowe, *J.*, denied the defendants' request for an instruction on express assumption of risk. Ultimately, the jury found in favor of the plaintiff and awarded $1,353,277.50 in damages.

The appellants claim that the district court erred by failing to instruct the jury to

decide whether the decedent expressly assumed the risks that caused her injuries. They also ask that the case be remanded for a new trial before a different district judge.

We reverse the judgment of the district court and remand for further proceedings but decline to order that the new trial be held before a different district judge.

## BACKGROUND

Cecelia Zyjewski was sixty-five years old and unmarried when a doctor diagnosed her as having cancer in March 1982. She initially sought the advice of conventional cancer specialists, each of whom advised her to undergo surgery to resect her tumor. Although, as doctors testified, early surgery would have given her a very good chance at recovery, she did not heed the doctors' advice, instead seeking first to explore noninvasive alternatives.

On March 25, 1982, Zyjewski, accompanied by her niece and her niece's husband, Carol and Dominic Palumbo, first consulted with Dr. Emanuel Revici at the Institute of Applied Biology. Dr. Revici's treatments consist of urine monitoring, urinalyses and the ingestion of various mineral compounds that Dr. Revici claims retard and reduce the size of cancerous tumors.

According to the testimony of Dr. Revici and the Palumbos, Dr. Revici told Zyjewski at this meeting that he thought she would respond to his treatment and that he thought that he could cure her. Dr. Revici allegedly alerted her, however, that his medications were not FDA approved and that he could offer no guarantees. Despite being so informed, Zyjewski entered Revici's care. Within a year, Zyjewski's condi-

tion had deteriorated greatly and in November 1983 she died.

At trial, the parties stipulated that Dr. Revici's method of treating cancer was legally negligent in that it did not conform to accepted medical standards in the New York area. The jury was asked to decide whether Dr. Revici's negligence as stipulated caused the decedent's injuries.[1]

The defendants asked the district court to instruct the jury on express assumption of risk, which, if found, would be a total bar to recovery. They argued that Zyjewski knowingly forwent conventional treatment and instead chose to accept the risks that accompanied Dr. Revici's treatment. The district court refused this request and instead instructed the jury to reduce any award for the plaintiff by an amount representing Zyjewski's own negligence.

The jury rendered a verdict for the plaintiff on wrongful death for $3,450 and on pain and suffering for $1,500,000. The jury found the decedent five percent liable for her death, reducing that award to $3,277.50, and ten percent liable for her pain and suffering, reducing that award to $1,350,000, for the total award of $1,353,-277.50.

## DISCUSSION

In this diversity case, New York law governs our decision whether a charge on express assumption of risk was appropriate. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where a litigant's claim or defense is supported by evidence of probative value, the litigant is entitled to have the district judge inform the jury of that claim or defense. *Cf. City of New York v. Pullman, Inc.*, 662 F.2d 910 (2d Cir.1981),

---

1. At trial, Boyle had introduced evidence of different types of negligence to support his argument. The first type of negligence, to which the parties stipulated, involved deviations from the standard medical practices in the New York area. Boyle also set out to prove that Dr. Revici caused Zyjewski's injuries by failing to apprise the decedent of her deteriorating condition and by telling her that her tumors were shrinking when in fact they were growing. Moreover, Boyle introduced evidence that Dr. Revici actively discouraged Zyjewski from obtaining con-

ventional medical care, even when she gravely needed it and it had become evident that his treatment was not succeeding.

Dr. Revici contested Boyle's allegations going to the second two types of negligence. Because Boyle requested that the judge instruct the jury that negligence was covered by the stipulation, however, only the narrow issue of whether Dr. Revici's negligence *as stipulated* was the proximate cause of the decedent's injuries went to the jury.

*cert. denied,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982). Failure to give such an instruction is error. We will grant a new trial because of an error in jury instructions if our review of the record convinces us that the error was prejudicial.

## A. *Express Assumption of Risk*

The defendants presented evidence at trial that Zyjewski consciously decided not to accept conventional cancer treatment and instead sought Dr. Revici's care, despite known risks of which she was aware. Accordingly, the defendants argue that the jury should have been asked not only whether Dr. Revici's negligence caused Zyjewski's injuries but whether she expressly assumed the risks that caused those injuries. We agree.

█ Under New York law, "[e]xpress assumption [of risk], which ... preclude[s] any recovery, result[s] from agreement in advance that defendant need not use reasonable care for the benefit of plaintiff and would not be liable for the consequence of conduct that would otherwise be negligent." *Arbegast v. Board of Educ.,* 65 N.Y.2d 161, 169, 490 N.Y.S.2d 751, 757, 480 N.E.2d 365, 371 (1985). Express assumption of risk is a total bar to recovery. *Id.*

█ In *Schneider,* we stated that "[w]hile a patient should be encouraged to exercise care for his own safety, we believe that an informed decision to avoid surgery and conventional chemotherapy is within the patient's right 'to determine what shall be done with his own body.'" 817 F.2d at 995 (citations omitted). This conclusion led us to hold that a patient may expressly assume the risk of malpractice and dissolve the physician's duty to treat a patient according to the medical community's accepted standards. *Id.*

Boyle emphasizes in his papers that Dr. Revici was unable to produce a consent form signed by Zyjewski. He points out that such a form existed in *Schneider* and suggests that in a case concerning unortho-

dox medical treatment an express assumption of risk charge is inappropriate where the defendant cannot produce such a form. We disagree.

Absent a statutory requirement that express assumption of risk requires a writing, we believe that a jury should decide whether a plaintiff has knowingly accepted all of the risks of a defendant's negligence. A defendant's failure to introduce a consent form goes to the weight of the evidence in support of the defendant's argument that an express assumption of risk has occurred. However, it does not justify keeping the express assumption of risk issue from the jury.

In this case, Dr. Revici presented evidence that Zyjewski had expressly assumed a risk in opting for the unconventional cancer treatment.[2] The credibility of that evidence should have been an issue for the jury. Accordingly, we reverse the judgment of the district court and remand for a new trial.

## B. *Request for a Remand to a Different District Judge*

█ The defendants contend that the district judge's conduct throughout the trial demonstrated impermissible bias against Dr. Revici and denied them their constitutional right to a fair trial. As support, they point to the judge's allegedly harsh questioning of Dr. Revici and her allowing the plaintiff to present two witnesses out of order to discredit Dr. Revici's case. Accordingly, they ask us to order that the case be remanded to a different district judge.

█ Ordering that a retrial be before a different district judge is a determination reserved for extraordinary situations. *See, e.g., Sobel v. Yeshiva University,* 839 F.2d 18, 37 (2d Cir.1988), *cert. denied,* 490 U.S. 1105, 109 S.Ct. 3154, 104 L.Ed.2d 1018 (1989). Moreover, "[e]xperience teaches that quotations lifted out of the transcript

---

**2.** We note that the jury was not asked whether Dr. Revici had acted negligently by failing to inform or misinforming the decedent as to her deteriorating condition. Therefore, we need not decide whether sufficient evidence existed to support an express assumption of risk instruction on this question.

can often be unintentionally misleading." *United States v. Weiss*, 491 F.2d 460, 468 (2d Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974). Having reviewed the entire transcript, we conclude that Judge Lowe acted patiently and properly throughout this proceeding. She tolerated the unwillingness of Dr. Revici to answer questions responsively. We also reject the notion that bias rather than efficiency and consideration for witnesses' other commitments motivated the district judge to grant the plaintiff's request to examine two witnesses out of turn. A district judge has considerable discretion in the conduct of a trial. Judge Lowe did not abuse that discretion in allowing witnesses to testify out of order. Accordingly, we will not now order that this case be remanded to a different district judge.

The parties have raised a number of other issues that do not affect our disposition of this appeal. We need not address them.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is reversed and this case is remanded for further proceedings not inconsistent with this opinion.