18-2066-cv
*C.C. v. Polaris Industries, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 7th day of August, two thousand nineteen.

Present:     JON O. NEWMAN,
             ROSEMARY S. POOLER,
             BARRINGTON D. PARKER,
                   *Circuit Judges*.

_____

C.C., an infant, by and through her natural mother,
CYNTHIA CAMARATA,

                   *Plaintiff-Appellant*,

            v.                                              18-2066-cv

POLARIS INDUSTRIES, INC.,

                   *Defendant-Appellee*.

_____

Appearing for Appellant:     Anthony R. Friedman, The Simon Law Firm, P.C (Anthony G. Simon, *on the brief*), St. Louis, MO

Appearing for Appellee:      Bruce Jones, Faegre Baker Daniels LLP (Nicholas J. Nelson, *on the brief*), Minneapolis, MN

Appeal from an order of the United States District Court for the Northern District of New York (Suddaby, *C.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of said District Court be and it hereby is **AFFIRMED**.

Plaintiff-Appellant C.C., by and through her natural mother, Cynthia Camarata, appeals from an order entered on June 19, 2018, in the United States District Court for the Northern District of New York (Suddaby, *C.J.*), denying C.C.'s motion for a new trial under Federal Rule of Civil Procedure 59(a). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

"We review a district court's denial of a Rule 59 motion for a new trial for abuse of discretion. It is a deferential standard, which reflects district courts' significant—although not limitless—latitude to exercise their inherent discretionary authority." *Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018) (footnote omitted). "We view the evidence in the light most favorable to the nonmoving party, and we will reverse a judgment only if the district court (1) based its decision on an error of law, (2) made a clearly erroneous factual finding, or (3) otherwise rendered a decision that cannot be located within the range of permissible decisions." *Id.* (footnote omitted) (internal quotation marks omitted).

C.C. primarily argues that the district court erred in: (1) admitting evidence of and instructing the jury on comparative negligence, which she argues is inapposite to a crashworthiness case; (2) admitting evidence of and instructing the jury on intervening causation; (3) precluding evidence of other similar incidents; and (4) precluding evidence of wrist restraints. We address each argument in turn.

First, C.C. argues that because her injury was caused by the alleged defect, not the rollover of the Ranger, it is an "enhanced" injury under the crashworthiness doctrine; thus, the district court abused its discretion in admitting evidence of her negligence because comparative fault is irrelevant in "pure" crashworthiness cases like this one. Appellant's Br. at 12-13. The crashworthiness doctrine is a theory of liability in tort law in which "the claimant does not allege that any defect in the [vehicle] caused the accident; rather, the allegation is that the claimant's injuries were more severe than what they would have been had the [vehicle] been properly designed." *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 243 (2d Cir. 1981). C.C. argues this is a pure crashworthiness case because she sustained no injuries other than the enhanced injury caused by the defective Ranger utility vehicle.

The district court disagreed. In ruling on C.C.'s motions in limine, the district court explained that it "cannot conclude that the facts in this case present a pure 'crashworthiness' case, or that the proof related to the cause of the rollover is fairly divisible from the proof related to C.C.'s injury." App'x at 32. In her motion for a new trial, C.C. argued "that, after having seen the evidence presented at trial, it should be clear that this is a crashworthiness case and that the injuries caused by the overturn (none) are plainly divisible from the injuries caused by the alleged design defects (amputation)." App'x at 323 n.2. Nevertheless, evidence at trial supported Polaris's argument that it was the B pillar, not an alleged defective part of the Ranger, that caused the injury to C.C.'s hand. The district court did not err in determining that the proof related to the cause of the rollover was not fairly divisible from the proof related to C.C.'s injury,

and thus it did not err in admitting evidence of and instructing the jury on comparative negligence.

Even if we were to assume this is a crashworthiness case, moreover, the district court did not err in allowing evidence of and instructing the jury on comparative fault because the jury did not reach the point in its analysis where it was instructed to consider it. "Juries are presumed to follow their instructions." *United States v. Snype*, 441 F.3d 119, 130 (2d Cir. 2006) (internal quotation marks and alteration omitted). With respect to Polaris's defense of comparative fault, the district court instructed the jury: "*If* you find that plaintiff has established one or more of her claims . . . *then* you will proceed to consider whether plaintiff was negligent in her actions and whether her negligence was a substantial factor in causing her injuries." App'x at 1913-14 (emphasis added). The jury indicated on the verdict form that C.C. had not proven the elements of any of her claims by a preponderance of the evidence, and it left the subsequent section regarding comparative fault blank. App'x at 313-14. There is no indication that the jury failed to follow the district court's instructions regarding comparative fault. The district court did not err in admitting evidence of and instructing the jury on comparative negligence for the above reasons. Accordingly, we need not reach C.C.'s argument regarding the import of comparative fault principles in crashworthiness cases.

Second, C.C. argues that the district court should not have instructed the jury on intervening causation because Nicholas Camarata's actions were foreseeable, as Polaris had actual knowledge that minors sometimes operate Polaris vehicles. Under New York law, "[w]here a litigant's claim or defense is supported by evidence of probative value, the litigant is entitled to have the district judge inform the jury of that claim or defense. Failure to give such an instruction is error." *Boyle v. Revici*, 961 F.2d 1060, 1062-63 (2d Cir. 1992) (citation omitted). Here, Polaris distinguished minors' occasional use of utility vehicles from parents' permission for such use. In particular, Polaris presented evidence and argued that it was not foreseeable that a parent would allow his 11-year-old child to drive a utility vehicle unsupervised, without the knowledge of how to shift gears, with a possible loose seat belt and unfastened net, with a 12-year-old and a 5-year-old passenger, on public roads. Thus, the district court did not err in giving an intervening cause instruction to the jury.

Third, C.C. argues that the district court erred in precluding evidence of other similar incidents. "District courts have broad discretion to determine the relevancy of evidence and that determination will not be overturned unless it is arbitrary or irrational." *United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994). "It is well settled that proof of a prior accident, whether offered as proof of the existence of a dangerous condition or as proof of notice thereof, is admissible only upon a showing that the relevant conditions of the subject accident and the previous one were substantially the same." *Hyde v. County of Rensselaer*, 51 N.Y.2d 927, 929 (1980). In considering substantial similarity, courts conduct a fact-specific inquiry to determine whether there are sufficiently similar circumstances. *See, e.g.*, *Lidle v. Cirrus Design Corp.*, 278 F.R.D. 325, 330 (S.D.N.Y. 2011).

Here, there is only one exhibit at issue that C.C. sought to introduce at trial: a one-page customer service report of a Polaris dealer transcribing a phone call about an accident of a different model of Polaris Ranger. The district court granted Polaris's motion in limine to

exclude this document. The district court reasoned that the incident was not "substantially similar" to C.C.'s incident because the report involved a "different model [of the Ranger], different net design, [and a] drunk driver." App'x at 357. The district court did not err in its observation that these three factors were different, and its conclusion that these differences resulted in an absence of substantially similar circumstances was not arbitrary or irrational.

Finally, C.C. argues that the district court erred in not allowing her to present evidence about wrist restraints, which she argues would have undermined Polaris's argument that she intentionally, rather than reflexively, put her arm outside of the Ranger. Initially, C.C. argued that wrist restraints are "available existing feasible alternative" designs. App'x at 457. Polaris objected, when the issue arose during trial, that "there's no competitor vehicle with wrist restraints" and "it's not an alternative design." App'x at 711. C.C. then explained that "[i]t's not being offered as an alternative design," but counsel did not explain its new purpose. App'x at 712. The district court responded, "But counsel, you do agree that it's not offered by any of the manufacturers in the industry as part of standard equipment that's provided with these vehicles," counsel conceded "I have no evidence otherwise," and the district court sustained the objection and struck from the record the question regarding wrist restraints. App'x at 712.

To the extent C.C. sought to introduce evidence of wrist restraints as bearing upon voluntariness versus involuntariness of hand movement, any limited relevance was substantially outweighed by a danger of confusing the issues. Fed. R. Evid. 403. C.C. argued to the jury that extending her arm out was "not voluntary, that's reaction." App'x at 1880. The district court noted, "as far as whether they can help [putting their arms out] or not . . . that's a decision for this jury to make." App'x at 459. Wrist restraint evidence was not necessary for the jury to understand that a person in a tipping vehicle may reflexively try to brace themselves before hitting the ground. And admission of such evidence may well have confused the issues regarding alternative design. The district court did not err in precluding evidence of wrist restraints.

We have considered the remainder of C.C.'s arguments and find them to be without merit. The order of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4