**LAITRAM CORPORATION,**
Plaintiff/Cross–
Appellant,

v.

**NEC CORPORATION and
NEC Technologies Inc.,**
Defendants–Appellants.

Nos. 96–1468, 96–1480.

United States Court of Appeals,
Federal Circuit.

June 3, 1997.

Phillip A. Wittmann, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., New Orleans, Louisiana, argued for plaintiff/cross-appellant. With him on the brief was Steven W. Usdin. Also with him on the brief were Timothy J. Malloy, Lawrence M. Jarvis, Gregory J. Vogler, and Sharon A.

Hwang, McAndrews, Held & Malloy, Ltd., Chicago, Illinois.

John M. Calimafde, Hopgood, Calimafde, Kalil & Judlowe, L.L.P., New York City, argued for defendants-appellants. With him on the brief was Marvin N. Gordon.

Before MICHEL, PLAGER, and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

NEC Corporation and NEC Technologies, Inc. ("NEC") appeal the denial of their motion pursuant to Fed.R.Civ.P. 60(b) for relief from judgment of damages for patent infringement entered by the United States District Court for the Eastern District of Louisiana, Civil Action No. 89–1571. As it had previously, NEC again sought rulings on two undecided post-trial motions for Judgment as a Matter of Law ("JMOL"), one concerning willfulness and the other whether the reexamined claims were identical to the original claims, but the district court held that our prior mandate precluded its ruling on the motions. Laitram Corporation ("Laitram") cross-appeals (1) the denial of enhanced damages; (2) the denial of attorney fees; and (3) the use of the U.S. Treasury bill rate, compounded annually, for the calculation of pre-judgment interest. The appeal was submitted for decision following oral argument on April 8, 1997.

Because the district court misinterpreted this court's mandate from a prior appeal, we reverse the denial of the Rule 60(b) motion and remand the case for a ruling on the JMOL motion on claim identicality. And because no abuse of discretion was shown in the denials of enhanced damages or attorney fees, nor in the rate used for the calculation of pre-judgment interest, we affirm all three rulings which are the subjects of the cross-appeal. On mootness grounds, however, we also vacate the finding of willfulness and direct the district court to dismiss the JMOL motion on willfulness.

## BACKGROUND

Laitram, owner of U.S. Patent No. 3,952,-311 ("'311 patent"), filed suit against NEC for patent infringement on April 10, 1989.

When a third party instituted a reexamination, the infringement suit was stayed for the duration of the reexamination proceeding. During the course of the reexamination, two claims were amended. The amended claims were allowed, and a Reexamination Certificate issued on March 27, 1990. The amended claims were asserted against NEC.

NEC then filed a motion for partial summary judgment in the district court arguing that the scope of the reexamination claims had been substantively enlarged over the original claims so that damages would only be available for the period following the Reexamination Certificate date (the "claim identicality" issue). The district court granted the motion, but this court reversed the grant of summary judgment and ordered that the issue proceed to trial. *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 21 USPQ2d 1276 (Fed.Cir.1991) ("*Laitram I*").

When the suit went to trial, the jury found infringement, willfulness, and that the reexamination claims were identical to the original claims (thus, damages were available from the original issue date). NEC timely filed separate motions for JMOL pursuant to Fed.R.Civ.P. 50(b) on the issues of (1) infringement, (2) willfulness, and (3) claim identicality. JMOL of non-infringement alone was granted. In light of that grant, the separate motions for JMOL on the issues of willfulness and claim identicality were "denied," not on the merits, but "as moot."

Laitram appealed the grant of JMOL of non-infringement. This court reversed the grant and remanded "with instructions to reinstate the jury's verdict." *Laitram Corp. v. NEC Corp.*, 62 F.3d 1388, 1395, 36 USPQ2d 1206, 1211 (Fed.Cir.1995) ("*Laitram II*"). The willfulness and claim identicality issues had neither been appealed, nor briefed nor argued by either party. Neither were they discussed in our opinion. The mandate issued August 25, 1995.

On September 8, 1995, NEC argued in a telephone status conference with the district judge that the willfulness and claim identicality issues, timely raised in the original JMOL motions but never decided on the merits, were no longer moot and must be decided.

Laitram opposed this request, arguing that all issues raised at any time had been disposed of by our mandate to reinstate the jury verdict and, alternatively, that NEC had waived these two issues.

NEC wrote to the Clerk of this court on September 12, and September 26, 1995, requesting clarification of the mandate. These requests were denied without opinion. NEC concurrently filed a Rule 60(b) motion in the district court, requesting relief from the denial as moot of its timely JMOL motions on willfulness and claim identicality, arguing that our court's mandate to reinstate the jury verdict of infringement rendered the motions no longer moot, but needing decision before final judgment could be entered. In effect, NEC argued it was entitled to decisions on the merits.

The district court denied the Rule 60(b) motion on December 21, 1995, reasoning that, as the mandate explicitly required reinstatement of "the jury verdict," it must mean the entire verdict. Therefore, it reasoned, the other two issues must also have been implicitly decided on appeal, adversely to NEC. In the alternative, the district court ruled that NEC's failure to raise the issues during Laitram's appeal in *Laitram II* or file a cross-appeal constituted waiver.

Following determination of damages, final judgment was entered on July 2, 1996. Liability was assigned for the full period and damages were considered for enhancement, but not actually enhanced, without ever ruling on the motions for JMOL. The district court, therefore, never determined whether the findings of claim identicality and willfulness were supported by substantial evidence and otherwise in accordance with law.

## DECISION

### I. Standard of Review

The parties disagree as to the appropriate standard of appellate review. Laitram asserts that the issue here is simply the denial of the Rule 60(b) motion which is reviewable only for abuse of discretion. *See Browder v. Director, Dep't of Corrections of Ill.,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521 (1978). NEC argues, however, that the dispositive issue on this Rule 60(b) motion is the interpretation of this court's mandate in *Laitram II,* a question of law, subject to de novo review. While NEC does not cite authority directly supporting its view, it argues that mandate interpretation should be treated the same as interpretations of such trial court orders as consent orders, consent judgments, and consent decrees, all of which have been held reviewable de novo. *See, e.g., Kenny v. Quigg,* 820 F.2d 665, 670 (4th Cir.1987) (consent order); *Turner v. Orr,* 759 F.2d 817, 821 (11th Cir.1985) (consent judgment); *United States v. National Steel Corp.,* 767 F.2d 1176, 1183 (6th Cir. 1985) (consent decree).

■ We agree with NEC that the interpretation by an appellate court of its own mandate is properly considered a question of law, reviewable de novo. We give much weight to the uniform treatment of other types of decrees and judgments by trial courts as reviewed de novo. Since here we interpret our own, not a trial court's order, it seems all the clearer that no deference is due. Thus, it is no surprise that de novo review appears to be the standard of review that several Circuit Courts of Appeals have adopted. *See Ginett v. Computer Task Group, Inc.,* 11 F.3d 359, 361 (2d Cir.1993) ("the appellate court retains the power to determine whether the terms of the mandate have been 'scrupulously and fully carried out'" (citation omitted)); *Burton v. Johnson,* 975 F.2d 690, 693 (10th Cir.1992) ("[appellate] court is vested with the authority to interpret its own mandate"); *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.,* 943 F.2d 1511, 1517 (11th Cir.1991) (no deference shown to trial court interpretation of appellate court mandate); *Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust,* 824 F.2d 765, 767 (9th Cir.1987) (no deference shown to trial court interpretation of appellate court mandate). Furthermore, the Supreme Court has noted, "either upon an application for a writ of mandamus or upon a new appeal it is for this court to construe its own mandate, and to act accordingly." *In re Sanford Fork & Tool Co.,* 160 U.S. 247, 256, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895). Logically, if the Su-

preme Court has plenary power to construe its own mandate, so must this court. Further, judicial rulings, like statutes, are official legal instruments of the sovereign. Generally, all such instruments—whether trial court orders or appellate court mandates—are reviewed de novo on appeal. It offends common sense, moreover, to suggest that we must defer to what a trial judge inferred about *our* intent in what *we* wrote.

We hold, therefore, that the standard of review for the interpretation of this like any other appellate court mandate is plenary. Thus, we must determine whether the district court misconstrued our mandate when it held that the mandate decided not only infringement, but also willfulness and claim identicality.

## II. Interpretation of the mandate in *Laitram II*

■ "Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on 'matters left open by the mandate.'" *Caldwell*, 824 F.2d at 767 (quoting *Sanford*, 160 U.S. at 256, 16 S.Ct. at 294). Therefore, the critical question in determining whether the district court had the power to hear and decide the motions for JMOL on remand, is what issues were left open by the mandate.

### A. The district court's interpretation of our mandate

■ In its order, the district court properly noted that "a district court must strictly obey the mandate of a circuit court of appeals." *Laitram Corp. v. NEC Corp.*, No. 89–1571, slip op. at 3 (E.D.La. Dec. 26, 1995) ("slip opinion"). The district court held that the mandate to "reinstate the jury's verdict" was "clear and obvious on its face." Slip opinion at 4. The court reasoned that the mandate must have intended for the entire jury verdict, including the findings on willfulness and claim identicality, to be reinstated because (1) "[h]ad the Federal Circuit intended for the Court to reinstate only a portion of the verdict and conduct further proceedings consistent with its mandate it could have done so," *id.;* (2) the denial of NEC's requests for clarification "in light of this

Court's proposed intention to reinstate the entire jury verdict provides further evidence that the Federal Circuit meant just that," *id.;* and (3) the willfulness and claim identicality issues were decided in *Laitram II* by implication.

■ At the outset, in all fairness to the district court, we appreciate the dilemma in which the court found itself on remand. Indeed, the district court's actions on remand should not be inconsistent with either the letter or the spirit of the mandate. *Quern v. Jordan*, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979). While the district court's interpretation of our mandate was reasonable, particularly in light of our refusal to clarify the issue when asked, the district court's reasoning was in error. As to the first reason proffered by the district court, while this court *could* have remanded with explicit instructions to decide the JMOL motions, the failure to do so is not dispositive. As to the second reason, the requests for clarification did not, as the district court suggests, disclose the district court's "intention to reinstate the entire jury verdict." Rather, the requests set out only the arguments of the two parties. Thus, the denials carry no inferential weight. As to the third reason, the assertion that the issues were decided by implication is a conclusion based only on the first two reasons. Furthermore, even if we were to agree that the issues somehow could have been implicitly decided, the district court misstates the rule limiting trial court power over issues decided by implication by an appellate court.

■ Although the district court cites much authority for the proposition that issues decided implicitly by courts of appeals may not be reexamined by the district court, the rule is actually applicable only to those issues decided by *necessary* implication. *See, e.g., Conway v. Chemical Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1062 (5th Cir.1981). In *Laitram II*, this court was solely reviewing the propriety of the grant of a JMOL of noninfringement. The willfulness and claim identicality issues were not antecedent to deciding the infringement issue, either logically or legally; indeed, they were the subject of separate JMOL motions, the denials

of which were *not* appealed. Nor could the denials have been appealed, for the motions were never decided on their merits by the trial court which simply denied (really, "dismissed") them as moot. Thus, the "decision by implication" rule cited by the district court is inapposite.

### B. Our interpretation of our mandate

Having concluded that the trial court misinterpreted our mandate in *Laitram II*, we now turn to the correct interpretation. According to *Sanford*, "[t]he opinion delivered by this court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate...." 160 U.S. at 256, 16 S.Ct. at 293. Here, the opinion delivered by this court at the time of rendering its mandate analyzes and reaches only the propriety of the JMOL of non-infringement. Given that willfulness and claim identicality were deemed moot (unless the JMOL of non-infringement were reversed), our mandate to "reinstate the jury verdict" could only have referred to the reinstatement of the verdict of infringement, the only issue appealed. It is incorrect to conclude that we decided issues not only undecided on the merits by the trial court because they were moot, and thus on appeal unripe, but also neither presented to us nor discussed in our opinion, nor necessary to our disposition of the appeal. The scope of our review, and our power to review, was limited to the sole order that was appealed. That order was limited to infringement.

### C. Objective analysis of the mandate

Cases with analogous fact situations are instructive in determining the scope of the mandate. In *Conway*, a case cited and relied upon by the district court, the plaintiff moved for a new trial on two separate grounds. 644 F.2d at 1060. The district court granted the motion based on the first ground only. The court of appeals reversed, discussing only the first ground. After receipt of the mandate from the first appeal, judgment was entered for the defendant based on the jury verdict. The plaintiffs then moved again for a new trial, re-urging the ground previously ignored by the district court. The district

court granted this motion and the court of appeals affirmed. On this second appeal, the court noted that, on the first appeal, "the appellate court discussed and passed upon only the first ground urged by the plaintiffs' motion for a new trial. Nor did the briefs of the parties at that appeal rely upon or discuss the second ground...." *Id.* at 1061. The court held that the law of the case doctrine applies only to those issues decided expressly or by necessary implication. *Id.* at 1062. The Court of Appeals for the Fifth Circuit also stated:

> The law of the case doctrine did not operate to prevent the district court from considering [the second ground], a meritorious issue never previously passed upon by it and never submitted to or decided by the appellate court on the previous appeal. The new trial so granted was within the power of the district court to grant.

*Id.*

■ This case is highly analogous to *Conway*. Here, the trial court granted only one of three JMOL motions filed by NEC, ruling on only one of three grounds urged by NEC. We reversed in an appeal from only that ruling in *Laitram II*. When NEC argued in the status conference call of September 8, 1995 that the motions for JMOL on the willfulness and claim identicality must be heard and decided because the reversal of the JMOL on the infringement issue rendered them no longer moot, it was within the power of the district court to reach those issues, just as it was within the power of the district court to reach the alternative ground for a new trial in *Conway*. The motions for JMOL on willfulness and claim identicality, like the alternative ground for a new trial in *Conway*, are "meritorious issue[s] never previously passed upon by [the district court] and never submitted to or decided by the appellate court on the previous appeal." *Conway*, 644 F.2d at 1062. Thus, although cited by the district court in support of its refusal to rule on the two motions for JMOL that remained undecided, *Conway*, properly interpreted, actually shows that NEC was entitled to its requested rulings which in no way were precluded by the mandate. We therefore hold that, after our mandate to

"reinstate the jury verdict," it was within the power of the district court (and outside the scope of the mandate) to rule on the two remaining motions for JMOL—on the willfulness and claim identicality issues; and because the issues were no longer moot and could have affected aspects of the final judgment in the suit, the district court was obligated to rule on them.

On appeal, Laitram, in seeking to justify the district court's refusal to rule on the undecided motions, relies on *Lindsey v. American Cast Iron Pipe Co.*, 810 F.2d 1094 (11th Cir.1987), for the proposition that a mandate to reinstate a jury verdict necessarily means to reinstate the entire verdict. In *Lindsey*, there were jury verdicts finding an Age Discrimination in Employment Act ("ADEA") violation and willfulness. The trial judge granted defendant the equivalent of what is now called a renewed motion for JMOL, a Judgment Notwithstanding the Verdict ("JNOV"). The Court of Appeals for the Eleventh Circuit reversed the grant, analyzing only the violation question. The mandate was to "reverse and remand for appropriate entry of judgment on the basis of the jury verdict." *Lindsey v. American Cast Iron Pipe Co.*, 772 F.2d 799, 802 (11th Cir. 1985). On remand, neither the plaintiff nor the defendant presented additional evidence on the willfulness issue. The district court, however, made its own finding on willfulness, finding non-willfulness in conflict with the jury's explicit finding of willfulness. *Lindsey*, 810 F.2d at 1097. During the second appeal to the Eleventh Circuit, the court stated: "[t]he court was not at liberty to make findings that conflicted with the jury's findings." *Id.* The court noted that "[t]his court reinstated the jury verdict, and the jury's fact findings became part of our mandate. . . . Under the law of the case doctrine, a district court may not deviate from the appellate court's mandate." *Id.* (citations omitted).

*Lindsey*, however, is in no way inconsistent with our ruling here. On remand, the district court in *Lindsey* did not, as would be the parallel to this case, consider a JNOV as to the willfulness issue, and thus decide a question of law, but rather substituted its own finding for that of the jury, thereby acting as a substitute finder of fact. The court of appeals in *Lindsey* correctly noted that "[o]nce a jury has necessarily or actually decided [such] an issue, the district court may not reconsider it," *Lindsey*, 810 F.2d at 1098. But it did not reach the analog to the question presented here: whether the district court could properly have considered a motion for JNOV on the willfulness issue. Thus, the case is inapposite. Even if it were apposite, *Lindsey* does not stand for the broad proposition urged by Laitram.

Laitram also seeks to rely on *Leroy v. City of Houston*, 906 F.2d 1068 (5th Cir.1990), for the proposition that even issues never discussed in the opinion by the court of appeals are nevertheless all subsumed in its mandate. In *Leroy*, the mandate contained a specific dollar amount judgment, but on remand the district court recalculated interest and decided other damages issues. On appeal of the final judgment, the Court of Appeals for the Fifth Circuit stated: "The fact that we did not expressly address the expenses in question is irrelevant, the point being that we vacated the judgment that included them and directed entry of judgment for a specific figure, which the district court thereafter exceeded." *Id.* at 1077.

The reasoning in *Leroy* is entirely inapplicable here because the mandate there included a specific dollar figure for the damages to be awarded and in reversing the district court, the court of appeals relied explicitly on the fact that the district court award exceeded the specific dollar amount mandated. While it would have been within the power of the district court to re-open issues not addressed expressly or by necessary implication by the court of appeals, it was clearly not within its power to award a different amount of money than that mandated explicitly by the court of appeals. Here, since damages were not addressed in *Laitram II*, and since nothing the district court could have done on the open issues could conflict with explicit statements in our mandate, the rule of *Leroy* does not apply.

## III. Waiver of the willfulness and claim identicality issues

The district court held that, even assuming it had the power to decide the willful-

ness and claim identicality issues on remand, NEC had waived those issues by failing to raise them in the first appeal. Slip opinion at 5. We disagree.

The district court reasoned that, although NEC could not have appealed or cross-appealed from the favorable JMOL of non-infringement, it could have briefed the issues of willfulness and claim identicality in its response to Laitram's appeal on infringement and the Court of Appeals for the Federal Circuit could have properly considered them in *Laitram II*. The issue here, however, is not what NEC *could* supposedly have argued, but rather what it was *required* to argue, or indeed could *properly* have argued.

Both the district court in its opinion and Laitram in its brief cite to many cases where an appell*ant* was held to have waived issues for purposes of a second appeal that it could have raised in its own first appeal. Both the district court and Laitram, however, ignore the fact NEC was the appell*ee* in *Laitram II*. Appellees do not select the issues to be appealed. Appellees, in addition, are at a procedural disadvantage in appeals because they can neither file reply briefs nor choose when to appeal. The policies pointed to by both the district court and Laitram—avoidance of piecemeal litigation and conservation of judicial resources—are less implicated when the party against whom waiver is asserted is the appellee. Indeed, these same policies may counsel for *not* forcing an appellee to raise all possible issues in an appeal. *See, e.g., Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 741 (D.C.Cir.1995) ("forcing appellees to put forth every conceivable alternative ground for affirmance might increase the complexity and scope of appeals more than it would streamline the progress of the litigation"). The court in *Crocker*, noting that cross-appeals are not necessary when a party merely presents an alternative basis for affirmance, stated:

> Thus, full application of the waiver rule to an appellee puts it in a dilemma between procedural disadvantage and improper use of the cross-appeal. That dilemma, together with the potential judicial *dis* economies of forcing appellees to multiply the number of arguments presented,

justifies a degree of leniency in applying the waiver rule to issues that could have been raised by appellees on previous appeals.

*Id.* Furthermore, the willfulness and claim identicality issues were not arguable as alternative bases for affirmance of the district court decision. NEC could not have defended the JMOL of non-infringement on appeal by presenting arguments about willfulness and claim identicality because they would have been logically and legally irrelevant. Nor could it have cross-appealed because there were no rulings on the merits against its motions, but merely denials "as moot."

We hold that NEC did not waive the willfulness and claim identicality issues by failing to argue them in response to Laitram's appeal. The arguments since directed to these issues were neither themselves on appeal nor relevant to the sole issue that was: infringement. Moreover, the willfulness and claim identicality issues were properly considered moot—until the reversal of JMOL of non-infringement. There is neither authority nor a sound policy reason to require NEC to have argued these issues, particularly in the absence, indeed unavailability, of a cross-appeal. It renewed the issues in a timely manner in the status conference call of September 8, 1995. It is clear what the district court should have done after that status call: address the motions for JMOL on the willfulness and claim identicality issues because our reversal of the JMOL on the infringement issue rendered them no longer moot. NEC made it clear that it wanted these issues resolved on the merits. Indeed, it was then entitled to rulings on the merits.

■ According to Rule 50(b), when a motion for JMOL is made after a verdict is returned, the district court may:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law . . . .

Fed.R.Civ.P. 50(b)(1). Rule 50(b) does not give the district court a fourth option of simply declining to hear the motion. Of course, so long as an issue remains moot, a district court need not decide a motion rais-

ing it, but rather may defer it, or deny or dismiss it as moot. It is equally clear, however, that once the issue is rendered no longer moot, the motion must be decided. It is, of course, critical to the orderly administration of justice that, when a non-moot motion is properly presented, it must be considered. Here, since our mandate from *Laitram II* did not divest the district court of power to hear and decide the motions for JMOL on the willfulness and claim identicality issues but rather made those issues ripe, and since NEC did not waive those issues, when NEC renewed the two JMOL motions in the status conference, NEC was entitled to decisions on the merits of each.

IV. Cross-appeal

■ Laitram cross-appeals the district court's discretionary denials of enhanced damages and attorney fees, and its choice of the prejudgment interest rate. The district court's decisions on all three of these issues are reviewed for abuse of discretion. *See Jurgens v. CBK Ltd.,* 80 F.3d 1566, 1573, 38 USPQ2d 1397, 1403 (Fed.Cir.1996) (analyzing the denial of enhanced damages and attorney fees for abuse of discretion); *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.,* 862 F.2d 1564, 1580, 9 USPQ2d 1273, 1287 (Fed. Cir.1988) (In a bench trial, "[s]imply put, the question of the rate at which such [a prejudgment interest] award should be made is a matter left to the sound discretion of the trier of fact.").

■ The district court held that, despite the jury finding of willfulness, which it assumed to be proper, enhanced damages were inappropriate because of the closeness of both the infringement and willfulness issues. Slip opinion at 9–10. Clear precedent holds that a finding of willfulness authorizes, but does not require, enhanced damages. *E.g., Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538, 543, 16 USPQ2d 1622, 1625 (Fed. Cir.1990). Laitram argues that the district court's findings that the infringement and willfulness issues were close "is skewed and carries little weight" because this court reversed the JMOL of non-infringement. However, jury verdicts need neither be overturnable nor sustainable before a district court can properly find that the issues decid-

ed were close ones. The district court properly considered whether NEC had presented a good faith defense against willfulness and a substantial challenge to infringement. *See Delta–X v. Baker Hughes Prod. Tools, Inc.,* 984 F.2d 410, 413, 25 USPQ2d 1447, 1449 (Fed.Cir.1993). It found the issues close. We detect neither clear error in those findings nor an abuse of discretion in the consequential refusal to enhance damages. We likewise see no abuse of discretion in the denial of attorney fees despite the jury verdict of willfulness.

■ As to the choice of prejudgment interest rate, the district court, in exercises of its discretion, awarded prejudgment interest and set the rate at the U.S. Treasury bill rate, compounded annually. The court held that this rate would "adequately compensate plaintiff for the lost use of its royalties." Slip opinion at 11. The district court found that there was no evidence that Laitram borrowed money at a higher rate, what that rate was, or that there was a causal connection between any borrowing and the loss of the use of the money awarded as a result of NEC's infringement. Nor has Laitram shown clear error in any of those findings. We hold therefore that there was no abuse of discretion in the district court's choice of prejudgment interest rate.

In the event that on remand the underlying damages calculation changes, this prejudgment interest rate remains an appropriate one for a recalculation of prejudgment interest.

V. Effect of our disposition of the cross-appeal on the remand

■ Since we uphold the district court's discretionary denial of enhanced damages and attorney fees, assuming a lawful verdict of willfulness, whether or not NEC's infringement was indeed willful cannot affect the amount of damages awarded to Laitram. Thus, even though the district court should have heard the motion for JMOL of non-willfulness after *Laitram II* rendered it no longer moot, our holding on this aspect of the cross-appeal renders the motion once again moot. In contrast, if the motion for JMOL

of claim non-identicality is granted, it will have an effect on the damages calculation because damages will only be given for the period of time after the Reexamination Certificate issued. We therefore vacate the jury verdict of willfulness, and remand with instructions to dismiss as moot the motion for JMOL of non-willfulness. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950).

## VI. Conclusion

We hold that appellate review of the interpretation of an appellate court mandate is plenary. We further hold that the mandate in *Laitram II* did not preclude the district court from hearing and deciding the motions for JMOL on the willfulness and claim identicality issues, and that NEC did not waive the right to the resolution of these issues on the merits by failing to address them during Laitram's appeal in *Laitram II.* We also hold that, once the motions for JMOL on the willfulness and claim identicality issues were rendered no longer moot by the reinstatement of the jury verdict of infringement, and NEC properly renewed the motions, the district court was obligated to hear and decide the motions. We further hold that the district court did not abuse its discretion in denying enhanced damages, denying attorney fees, or choosing the prejudgment interest rate. Finally, we hold that our affirmance of the discretionary denial of enhanced damages and attorney fees renders the motion for JMOL of non-willfulness once again moot, and we therefore vacate the jury's verdict of willfulness and remand with instructions to dismiss the motion.

We therefore reverse-in-part and vacate-in-part on the appeal, affirm in all three respects on the cross-appeal, and remand for the district court to consider and decide the motion for JMOL on the claim identicality issue and to dismiss the motion for JMOL on the willfulness issue.

*REVERSED–IN–PART, VACATED–IN–PART, AFFIRMED–IN–PART,* and *RE-MANDED.*

COSTS

Costs to NEC.